The Honorable John C. Coughenour

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MARK RAHNER,

    Plaintiff,

v.

THE SEATTLE TIMES COMPANY, a Delaware corporation,

    Defendant.

No. 2:12-cv-00880

DECLARATION OF SANDRA HOLLENBECK IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

I, Sandra Hollenbeck, declare as follows:

1. I make the statements in this declaration based on personal knowledge and my review of the business records of The Seattle Times that are kept in the usual course of business, and am competent to testify to the matters stated herein.

2. I am currently employed by The Seattle Times Company as Human Resources/Employee Relations Manager, a position I have held since in November 2005.

3. In my role, I am responsible for recruitment and hiring; company training initiatives; and employee relations issues including performance management and

Declaration of Sandra Hollenbeck (2:12-cv-00880) — 1
DWT 22249878v2 0040701-001034

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

130

accommodation requests. When needed, I have also handled workers comp claims and leave requests including FMLA.

4. STC has an attendance policy that requires employees be at their work stations on time for each scheduled shift, fully able and ready to work. This policy was in place during 2009 and 2010. It states that employees must report to their managers if they will be tardy or absent. A true and correct copy of the attendance policy in effect in 2010 is attached as **Exhibit A.**

5. I first interacted directly with Mark Rahner in 2010 when he was seeking a medical leave and accommodations. It is my understanding that Mark had chronic fatigue syndrome (CFS). I started communicating with Rahner about his CFS and need for accommodation in August 2010. Prior to this, Rahner had been communicating directly with his editors and the then-Director of Human Resources, Nancy Hawman. Nancy left her role as Director of Human Resources in the summer of 2010.

6. When I started communicating directly with Mark Rahner in August 2010, he was on a continuous FMLA leave. He was supposed to work the evening shift upon his return absent some other agreement, proposal, or accommodation.

7. Rahner exhausted his FMLA leave in late October 2010. His naturopath, Dr. Paul Dompe, provided a note releasing him to return to work with an accommodation of a "flexible work assignment that will allow Mark the periodic rest needed to prevent a relapse." The note also said Dr. Dompe did not recommend "night shift reporting as the demands of such an assignment will likely cause relapse of Mark's condition." I was surprised by this last

Declaration of Sandra Hollenbeck (2:12-cv-00880) — 2
DWT 22249878v2 0040701-001034

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

131

sentence because it was my understanding that Dr. Dompe had previously stated that Mark Rahner could not work morning hours either.

8. In response to Dr. Dompe's letter, I called Rahner on November 3, 2010. We discussed Dr. Dompe's letter and the evening shift assignment. Rahner reiterated that mornings were tough for him and that he did not wish to return to the evening shift. I asked Rahner if he had any alternatives to propose instead of the evening shift in light of his CFS and inability to report to work in the mornings. He said that the needed a job that had independence, allowed him to come in when he wanted, and did not require a predictable schedule.

9. After this call, I talked to Mark Higgins and Suki Dardarian about Rahner's proposal that he work in a job without a predictive schedule. Mark and Suki explained to me why Rahner's proposal was not possible in his role as a GA breaking news reporter. We did not have any GA breaking news reporter positions – morning, day or evening – that did not require adhering to a predictable schedule. Thus, we could not accept Rahner's proposal that he work a non-predictive schedule and have full independence.

10. In order to continue the interactive process with Rahner, we provided him a non-FMLA medical leave pending additional information from Dr. Dompe.

11. I immediately followed up with Dr. Dompe to seek clarification on Rahner's *specific* limitations and the *specific* accommodations he needed to address those limitations. Dr. Dompe responded on or about November 17, 2010. He answered several questions about Rahner and his medical needs. Dr. Dompe stated that the "flexibility" Rahner needed was

Declaration of Sandra Hollenbeck (2:12-cv-00880) — 3
DWT 22249878v2 0040701-001034

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

132

limited to three 15-minute breaks per 8-hour shift to be taken as needed. Dr. Dompe also stated that there was "[n]o restriction on [Rahner's] work hours," including "the time of day" for Rahner's shift. When I asked about the basis for Dr. Dompe's statement in his October 27, 2010 letter that the evening shift could lead to Rahner's relapse, Dr. Dompe responded that he understood that the evening shift "demands sustained and continuous vigilance and does not allow the flexibility necessary to meet Mark's medical needs (i.e. rest breaks at the onset of fatigue)." Based on Dr. Dompe's statements in the questionnaire, I understood that the only accommodation Rahner needed was to received three 15-minute rest breaks to be taken as needed. As explained above, a true and correct copy of the questionnaire completed by Dr. Dompe is attached here as **Exhibit B**.

12. Upon receiving Dr. Dompe's answers to STC's questionnaire, I again consulted with Mark Higgins and Suki Dardarian. We determined that STC could provide Rahner the three 15-minute rest breaks to be taken as needed during an eight-hour on the evening shift.

13. Around mid-November, Rahner complained that he believed his editor, Mark Higgins, subjected him to a hostile work environment by referring to his dislike of working in the morning and that he assigned him to the evening shift as punishment. My colleague, Michelle McKinnon handled the complaint and response in my absence due to a family emergency. Michelle investigated Rahner's complaint and did not find any evidence that Higgins or other managers in the newsroom treated Rahner in a hostile, unfair or discriminatory manner. During Michelle's communication with Rahner, he continued to object to the evening shift and reiterate his desire for a day shift with full schedule flexibility.

Declaration of Sandra Hollenbeck (2:12-cv-00880) — 4
DWT 22249878v2 0040701-001034

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

133

14. On November 26, 2010, I telephoned Rahner to confirm that, in light of Dr. Dompe's answers to the questionnaire and Dr. Dompe's conclusion Rahner did not require a restriction in his work hours, Rahner would be assigned to the evening shift. I told him STC could and would provide Rahner three 15-minute rest breaks per eight hour shift to be taken as needed. I also told him that STC would like to try having him in the evening shift for a while and then assess how it was working for everyone. Rahner refused this accommodation (and the evening shift) and again insisted that he wanted an assignment that allowed for independence and full flexibility, and that utilized his strengths. I asked him if there was an assignment that existed like the one he described at the time, and he stated that he did not so. I also explained that STC was willing to work with him, but would not create a new assignment or job that did not already exist. A true and correct copy of my notes of that conversation at **Exhibit C**.

15. In December 2010, Rahner filed a grievance with his union regarding the decision to move him to the evening shift. STC engaged in the grievance process on December 7, 2010 to seek additional input from Rahner about his accommodation needs and to hopefully broker a mutually agreeable solution. During the grievance meeting, Rahner again reiterated his demand for full schedule flexibility during a day shift. His union representative suggested STC create a position for Rahner with an 11 a.m. start time. He did not make any other proposals during the grievance meeting.

16. After the grievance meeting, I worked with Suki Dardarian to explore whether STC could create an 11 a.m. shift for a GA breaking news reporter as proposed by Rahner's union rep. Suki explored the possibility and responded that it was not an option. She explained

Declaration of Sandra Hollenbeck (2:12-cv-00880) — 5
DWT 22249878v2 0040701-001034

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

134

it was a poor use of very limited reporter resources in Metro and did not work effectively with the daily print deadlines.

17. On December 17, 2010, I sent Rahner a memo following up on the grievance explaining that STC would not create an 11 a.m. shift because it was not an effective use of Metro's limited resources. I also informed him he would be assigned the evening shift when he returned to work. Also, after the grievance meeting, I informed Rahner that he was expected to show up for work on January 3, 2011. The grievance process ultimately failed and the union did not pursue further remedies.

18. Rahner did not show up for his scheduled shift on January 3, 2011. Instead, he sent an email refusing to work the evening shift and suggesting that his blood work showed he was at risk of a "medical emergency" that might threaten a relapse. He also referred to two irrelevant provision of the Collective Bargaining Agreement that he suggested required STC to provide him flexibility to come and go as he pleased. Both provisions were irrelevant as they were referring to reporter job sharing and/or working four ten-hour days a week instead of five eight-hour days a week. A true and correct copy of that email is attached as **Exhibit D**.

19. Based on this new assertion of a looming medical emergency, STC again engaged in the interactive process and offered Rahner yet another medical leave. In an email, I also told Rahner: "we remain open to any proposals you may have beyond what we have discussed that might be mutually agreeable." A true and accurate copy of that email is attached as **Exhibit E**. I followed up with Dr. Dompe on January 5, 2011 about Rahner's new assertions of a medical emergency and to seek clarification that Mr. Rahner could work the evening shift with the rest break accommodation in light of Rahner's ongoing insistence that STC has

Declaration of Sandra Hollenbeck (2:12-cv-00880) — 6
DWT 22249878v2 0040701-001034

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

135

misinterpreted Dr. Dompe's prior notes. I explained that STC could provide the rest breaks that Dr. Dompe stated Rahner needed and explained a little more about what the evening shift involved. I worked directly with Suki Dardarian and Mark Higgins to describe the evening shift. Dr. Dompe responded the next day. In unequivocal terms, he stated that Rahner was not suffering from a medical emergency and that he was able to perform the evening shift with the rest break accommodations offered by STC. He did not identify any other accommodations that Rahner needed in order to maintain his health.

20. Rahner continued to refuse to return to work even after seeking Dr. Dompe's note stating that he could work the evening shift with a rest break accommodation. Rahner stated that he did not intend to return to work if he had to work the evening shift. He refused to even attempt the evening shift with the rest break accommodation STC was willing and able to provide.

21. On January 7, 2011, STC notified Rahner that he had not shown up for work several days in a row and that further refusal to report would be considered job abandonment. Rahner did not show up on January 10, 2011. The following day, STC notified Rahner that he had abandoned his job, resulting in separation from employment. A true and correct copy of the letter is attached as **Exhibit F**.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge and belief.

Executed in Seattle, Washington, this 8th day of July, 2013.

*[signature]*

Declaration of Sandra Hollenbeck (2:12-cv-00880) — 7
DWT 22249878v2 0040701-001034

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

136

Sandra Hollenbeck

Declaration of Sandra Hollenbeck (2:12-cv-00880) — 8
DWT 22249878v2 0040701-001034

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax